## Case No. 17,141.

In re WANGERIEN.

[11 Int. Rev. Rec. 181.]

District Court, N. D. Ohio. 1870.

INTERNAL REVENUE—WHOLESALE DEALERS.

In the section of the act of April 10, 1869 [16 Stat. 41], defining what constitutes a wholesale dealer, the words "five gallons" refer to "wine" gallons, and not to "proof" gallons.

On motion to set aside a verdict rendered against A. Wangerien & Son, of Cleveland, Ohio, in the United States court.

Geo. Willey, U. S. Dist. Atty., for court.

J. E. Ingersoll and John W. Heisley, for defendants.

SHERMAN, District Judge. The defendants, authorized retail dealers in liquor, were indicted for carrying on the business of wholesale dealers in liquor under section 44 of the act of July 20, 1868 [15 Stat. 130], which imposes for such offence a fine of not less than $1,000 or more than $5,000, and imprisonment not less than six months nor more than two years. "A retail dealer," by this law, "pays a special tax of $25, and is defined to be one who sells foreign or domestic spirits, wine, ale, beer, or other malt liquors, and whose annual sales, including all sales of other merchandise, do not exceed $25,000." "A wholesale dealer in liquor pays a special tax of $100, whose annual sales do not exceed $25,000; and if exceeding $25,000, pays in addition $10 for every $1,000 of sales of such spirits, wines, or liquors, in excess of $25,000; and on other sales shall pay as wholesale dealers; and such excess shall be assessed and paid in the same manner as required of wholesale dealers. Every person who sells distilled spirits, wines, or malt liquors, whose annual sales shall exceed $25,000, shall be regarded as a wholesale liquor dealer." By this law, therefore, one selling $25,000 of liquors paid a tax of $25, while one selling one dollar in excess of that sum was compelled to pay a tax of $100. This bore hard, evidently, upon the wholesale dealer, and for this and other reasons the above definitions were changed by the act of April 10, 1869.

By this act it was provided that "every person who sells foreign or domestic spirits, wines, or malt liquors in quantities of not less than five gallons at the same time, shall be regarded as a wholesale liquor dealer," and pay a tax of $100. A retail dealer is one who sells less than five gallons of the same liquor, and pays $25 tax. Within the above definition of a wholesale liquor dealer it was necessary to bring the defendants, to insure a conviction. Upon the trial, the government showed a sale of five wine gallons of whiskey by defendant, at the same time, to one person, and rested. The defendants then offered evidence tending to show that said five gallons were below proof, and that, therefore, they had sold less

than five proof gallons, and consequently had not carried on the business of a wholesale liquor dealer. The court allowed this evidence to go to the jury, but charged that, if five wine gallons were sold, the offence was proved. The jury found the defendants guilty. Thereupon they moved for a new trial for alleged error in the charge; and the simple question presented by the motion is this: Do the words "five gallons," in the act of 1869, mean wine or proof gallons?

The definition of wholesale liquor dealers and of retail liquor dealers, and the distinction between them, from the first revenue law in 1862 [12 Sat. 432] down to the act of March 2, 1867 [14 Stat. 471], were substantially the same as those of the act of 1869; except that the dividing line was three instead of five gallons. Congress, having the constitutional power to fix the standard of weight and measures, has, in all these as in all later acts, declared a proof gallon to be a wine or gauge gallon of that alcoholic liquor containing one-half of its volume of alcohol. This was done to establish a basis on measure of taxation, and to compel an honest payment of that tax by distillers, —first and second sections of the act of 1868. These reasons have no application to, or connection with, rectifiers, compounders, or dealers, for though the packages handled by these persons must, under heavy penalties, be inspected, gauged, marked, and branded, it is for the purpose of preventing fraud by distillers, and of tracing fraud where it exists back to the manufacturer of the spirits.

Now, under these former acts prior to March, 1867, it was universally held by the revenue department and by the courts that the "three gallons" meant wine gallons, and this was the true construction beyond all doubt. No other construction was claimed or acted upon by any person. By the first section of the act of March 3, 1865 [13 Stat. 469], the fifty-sixth section of the act of June 30, 1864 [13 Stat. 243],—a section almost precisely like the second section of the act of 1868, by virtue of which it is claimed that the court erred in its charge,—was amended by adding these words: "And in all sales of spirits hereafter made, where not otherwise specially agreed, a gallon shall be taken to be a gallon of first proof, according to the standard set forth and declared for the inspection and gauging of spirits throughout the United States." There is nothing in this amendment certainly which changed the existing definition of wholesale and retail dealers or changed the dividing line between them from three wine gallons to three proof gallons, since, among other reasons, that would allow parties, by a private agreement, to change an act of congress. The object of the amendment was probably this: Every revenue law has levied the tax on spirits upon the basis of a proof gallon; that is, every wine gallon of spirits less than proof paid a tax of the same amount as a wine gallon first or full proof. Under the law of 1862 the tax

was small—twenty cents per gallon. Under the law of 1864 the tax was raised to two dollars per gallon. Evidently the object of this amendment was to allow the tax-payer, who paid the same tax of two dollars on a wine gallon of spirits forty per cent. below proof as on a wine gallon of spirits of fifty per cent. or full proof, to sell the same, "if not otherwise specially agreed," as a proof gallon and for the same price if he could find a purchaser, and so to enable the tax-payer and seller to pay two dollars on a wine gallon below proof; the amendment declared that such a wine gallon should, in all sales, be taken to be a full proof gallon. That this fact, in any suit between the seller or purchaser, should not be disputed or called in question, "unless otherwise specially agreed" upon between the parties. The same amendment was preserved in the act of the 13th of July, 1866, § 33 [14 Stat. 157], together with the same definition of wholesalers and retailers as given in the act of 1862. Still no one ever claimed or supposed that this amendment changed the dividing line between wholesalers and retailers from "three wine gallons" to "three proof" gallons. Indeed, this opinion sprung up after, and because the second section of the act of 1868 in adopting the same amendment left out the words "except where not otherwise specially agreed," and it sprung up also because the scope, meaning, and bearing of this amendment in the law of 1865 and 1866 were forgotten or not examined. Everyone believed that in the phrase selling "three gallons of distilled spirits fermented liquors, and wines of every kind," under these acts of 1865 and 1866 the words "three gallons" meant wine and not proof gallons. It meant this for the simple reason that neither in commerce nor in our revenue laws was the term "proof gallon" ever applied to wines of any kind or fermented liquor.

The definition of wholesalers and retailers, given in the law of 1869, considered by itself, declares beyond question that the dividing line between them is "five wine gallons," and not "proof gallons," and this seems to be admitted by counsel, who nevertheless claim that these words, when construed with the second section of the act of 1868, mean proof gallons. Indeed, any other construction of the words than wine gallons would be simply to set a trap for the ignorant, unwary, and innocent dealer. For it requires the possession of a hydrometer, which not one dealer in a thousand has; of a perfect thermometer, also, to measure the proof gallon, or, in other words, to arrive at and measure with certainty the exact quantity below or above five gallons allowed to be sold by the special tax certificate of the retailer or wholesaler; and if by any defect in these delicate instruments, or by any unskilfulness of the manipulator, a mistake is made, fine and imprisonment might follow. Should the retailer sell ten gallons marking by his instrument 24½ proof, he is safely with-

in supposed legal limit of less than five proof gallons. But should a more accurate or perfect instrument make the proof twenty-five per cent, he would be liable to a fine of five thousand dollars and imprisonment for two years; and possibly, in this age of whiskey frauds, would be convicted and suffer the penalties prescribed. Such a law, or a construction of any law leading to such consequences, would be cruel and outrageous. On the other hand, congress knew that every family, every liquor dealer, had a wine measure of some capacity, a gallon, quart, or pint, using which no violation of the law could be committed, except purposely.

If the construction I have indicated by the law of 1869 is at variance with the law of 1868, we must still give it effect as the latest declaration of the legislative will. An examination of this law shows that it does not sustain the construction put upon the law of 1869 by defendant's counsel. Let us examine various sections of this law and see if they indicate that the definition in the law of 1869 imports proof gallons. Section 1: "There shall be levied on every proof-gallon a tax of fifty cents, which shall be collected on the whole number of wine or gauge gallons when below proof, and increased in proportion to the strength above proof." Section 19: "The distiller shall make true and exact entry of the number of gallons distilled, the number of gallons placed in warehouses and the proof thereof," and also "the number of gallons sold or removed and the proof thereof." Section 23: "All spirits are to be drawn from the receiving cistern into casks of not less capacity than twenty gallons wine measure." Section 27: "Between sun-set and sun-rise no cask containing more than ten gallons to be removed from any place where made or stored." Section 47: "Every package containing not less than ten gallons drawn from any other package must have the proof marked thereon." This would be superfluous if the "ten gallons" imported proof-gallons. Section ——: "Certain persons are forbidden under a penalty of $1,000 from purchasing distilled spirits in quantities greater than twenty gallons, except from an authorized rectifier, compounder, distiller, or wholesale dealer in spirits." Each of the persons so purchasing and so selling must, by other sections of the act, enter the quantities bought and sold and the proof thereof in a book kept for that purpose. These two words, "quantities," in different sections, plainly mean wine gallons. The retailer is not among the excepted persons, and yet should be, if he has the right to sell over twenty gallons at a proof low enough to make less than five proof gallons. These quotations and numerous others, which might be quoted, plainly show that when quantities, or the contents of casks or packages, are spoken of in the law, wine gallons are the ones referred to; that proof gallons are spoken of only in relation to the rate of taxation; and even in the latter case, by the first section, the tax is collected upon the wine or gauge gallon.

Again, one great object of the law of 1868 was the prevention of fraud in the collection of duties. Every section is carefully drawn to effect this purpose. It fixes the size of packages for tobacco, snuff, cigars, and whiskey. It covers them with brands, stamps, marks, and notices, so that any person witnessing a sale of any of these articles can know at a glance whether a violation of the law has occurred. This object would be defeated as to many provisions relating to distilled spirits, if wholesale dealers may sell, as defendants claim, a cask of two and one-half gallons, so that the spirits are 100 per cent. proof; and the retailer a cask of ten gallons of spirits, so that they are 26 per cent. below proof.

I have already observed that the words "five gallons" in the definition given by the law of 1869 mean, looking only to the definition, wine gallons. I have already shown that the construction of former laws and the practice under them, and the general scope and interest of the law of 1868, not only are not opposed to this meaning, but sustain it. I will now examine the second section of the law of 1868, which section, as claimed by defendant's counsel, makes the "five gallons" in the definition mean proof gallons. The first section, after levying a tax of fifty cents on each proof gallon, directs that "it shall be collected on the whole number of gauge or wine gallons when below proof, and shall be increased, in proportion, for any greater strength than the strength of proof spirit as defined by this act." The second section, after declaring that "proof spirit shall be that alcoholic liquor that contains one-half of its volume of alcoholic specific gravity of 79.39 at sixty degrees Fahrenheit," adds, our old acquaintance, the amendment of the act of 1865, in these words: "And in all sales of spirits hereafter made, a gallon shall be taken to be a gallon of proof spirits according to the foregoing standard set forth and declared for the inspection and gauging of spirits throughout the United States." Had the phrase, "unless otherwise specially agreed," contained in the former amendment, been retained in this, no one would have imagined that the five gallons in the definition meant five proof gallons, that it compelled us to read "five gallons" when applied to spirits, as five proof gallons, and when applied to wine and beer, as five wine gallons. But that phrase was mere surplusage, since every person could legally contract for any degree of proof—as he may, for wheat weighing, less or more than sixty pounds to the bushel, the standard fixed by law—whether the phrase "unless otherwise specially agreed" were retained or rejected. The amendment imports, in law, the same meaning, and establishes the same rule in sales without as it does with the phrase. Not having changed the meaning of the "three

gallons" in the law of 1865, it cannot, then, change the meaning of "five gallons" in the law of 1869.

Let us analyze the provision, "in all sales of spirits, a gallon shall be taken to be." A gallon of what? Why, a gallon of spirits. What kind of a gallon? Why, certainly a wine gallon. The sentence then will read thus: "In all sales of spirits, a wine gallon of spirits shall be taken to be a gallon of proof spirits." The clear, obvious import and meaning of this, is, that where a transaction has no other element than the mere sale of five wine gallons of whiskey, as in this case at the bar, they shall be considered and taken to be five proof gallons; and that, too, whether they are above or below proof; that throughout the United States a wine or gauge gallon of spirits sold shall be taken and adjudged to be a proof gallon sold; that in a contract for the sale and delivery of one hundred gallons of whiskey merely, the contract is fulfilled by the delivery of one hundred wine gallons above or below proof, upon which a tax is laid by the first section. This provision, so construed, is in accordance with the custom of the trade in reference to small quantities. No purchaser of a few gallons of whiskey ever inquires about the proof. This section, then, for the benefit of the distiller obliged to pay the same tax upon a gallon below proof as upon a proof gallon, sanctions the custom of the trade, and extends the same to any quantities, however large. It declares in effect that in any suits growing out of such sales where this question is involved, the courts shall allow neither buyer nor seller to dispute this fact, this conclusive presumption of law.

It follows, therefore, not only that this section does not change or modify in any way the definition given by the law of 1869, but is clearly opposed to the construction claimed by defendants' counsel. It shows, clearly, too, taken in connection with the first and other sections quoted above, that the law of 1868 made the wine gallon the measure of capacity and quantity, and, with a single modification, of taxation also. It is apparent from all this that the only error committed by the court was, after the sale of five wine gallons had been proven, in allowing evidence to go to the jury tending to show that they were not proof gallons, the law itself declaring that in such case they should be taken to be proof gallons. The motion is overruled.